UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CORCEPT THERAPEUTICS, INC.,            Case No. 1:22-mc-24
     Plaintiff,                                           Dlott, J.
                                                         Litkovitz, M.J.

    vs.

STEPHEN ELLIOTT,                                   **ORDER**
     Defendant.

Petitioner Corcept Therapeutics Inc. ("Corcept" or "Petitioner") commenced this miscellaneous action in support of litigation pending in the United States District Court for the Northern District of California, *Ferraro Family Foundation, Inc. v. Corcept Therapeutics Inc.*, Case No. 3:19-cv-01372 (N.D. Cal.). Petitioner asks the Court to compel Respondent Stephen Elliott ("Elliott" or "Respondent") to comply with the subpoena issued by Corcept. (Doc. 1). This matter is before the Court on Petitioner's motion to compel compliance with the subpoena (*Id*.), Respondent's response in opposition and motion for sanctions (Doc. 8), and Petitioner's reply memorandum (Doc. 9).

**I. Background**

Petitioner, "a publicly-traded specialty pharmaceutical company engaged in the discovery and development of drugs that regulate the effects of the stress hormone cortisol," is one of the defendants in the underlying litigation. (Doc. 1 at PAGEID 8-9). Plaintiffs in the underlying litigation allege that Corcept violated federal securities law by engaging in a "'pervasive Company-wide off-label marketing scheme' to 'dupe unsuspecting physicians' 'into inappropriately prescribing Korlym.'" (*Id*. at PAGEID 9, citing Complaint at ¶ 1).[1] The

---

[1] Korlym, an orphan-status rare disease drug, is an FDA-approved medication that Petitioner sells under the trade name Korlym. (Doc. 1 at PAGEID 8).

operative complaint in the underlying litigation "relies heavily on purported reports from four confidential witnesses, including [Respondent] Mr. Elliott, who is identified as 'CW11' and is cited more than 68 times in the Complaint." (*Id*.).

Petitioner states that Respondent, Mr. Elliott, was a Corcept clinical sales specialist from 2012 to 2016, and plaintiffs in the underlying litigation "have relied heavily on information provided by Mr. Elliott to support their allegations that Corcept engaged in off-label marketing and told him to 'sit down and shut up' when he purportedly raised the issue." (*Id*., citing Complaint at ¶¶ 175-76, 187, 190-94, 213-15, 262, 267, 270, 283-87, 292, 302, 366-67, 370, 372-73, 375, 379, 392, 412, 414, and 421).

On March 9, 2022, Petitioner issued a subpoena directed to Respondent seeking several "categories of documents related to the allegations in the Corcept Securities Action." (*Id*.). Specifically, the Subpoena sought the following documents from Respondent:

1. A copy of Your most recent Resume.

2. All Documents and Communications related to this Action.

3. All Documents and Communications concerning Your termination of employment at Corcept, including but not limited to any termination or separation agreement(s).

4. All Documents and Communications concerning Corcept.

5. All Documents and Communications concerning the Individual Defendants.

6. All Documents and Communications between You and any Governmental Entity concerning Corcept, including, but not limited to, Documents You provided to any Governmental Entity related to the allegation that Corcept was engaged in off-label marketing.

7. All Documents and Communications between You and Plaintiffs, their counsel, investigator(s) or other representative(s) in this Action.

8. All Documents and Communications related to the statements attributed to You in the Complaint, including, but not limited to, those alleged at ¶¶ 175-76, 187, 190-

> 94, 213-15, 262, 267, 270, 283-87, 292, 302, 366-67, 370, 372-73, 375, 379, 392, 412, 414, and 421 of the Complaint.
>
> 9. All Documents and Communications forming the basis of the statements attributed to You in the Complaint.
>
> 10. All Documents and Communications concerning the allegation that Corcept was engaged in off-label marketing.
>
> 11. All Documents and Communications concerning conversations with other Confidential Witnesses about the Action or the allegation that Corcept was engaged in off-label marketing, including, but not limited to, any recording, notes or other memorialization of such conversation(s).

(Doc. 1, Exh. 1, at PAGEID 27). Respondent was served with the subpoena on March 10, 2022. (*Id*. at PAGEID 9; *see also Id.*, Exh. 4, at PAGEID 422-23). Petitioner alleges that the requested documents in the subpoena "go to the heart of the claims at issue in the Corcept Securities Action, and Corcept is entitled to their production." (*Id*. at PAGEID 10).

Petitioner alleges in the motion to compel that a month after receiving the subpoena, counsel for Respondent conferred with counsel for Petitioner and stated that Respondent "did not believe he could produce documents in response to the Subpoena because Mr. Elliott had already produced relevant documents to a U.S. Attorney's Office." (*Id*.). Thereafter, on May 9, 2022, Counsel for Respondent "informed Corcept that the U.S. Attorneys' Office would be objecting to the Subpoena, and Mr. Elliott would not be producing any documents for that reason." (*Id*.).

On June 7, 2022, Respondent served Responses and Objections to the Subpoena. (*Id*., Exh. 6). In addition to what Petitioner describes as a "host of boilerplate objections," Petitioner alleges that Respondent "objected that the Requests call for the 'disclosure of information pertaining to the investigative activities of any governmental entity or personnel, which may implicate the government's interests in maintaining the confidentiality of its investigative

3

activities.'" (*Id*.).  After communicating with the U.S. Attorney's Office, Petitioner informed Respondent that "it was withdrawing Request No. 6." (*Id*. at PAGEID 11, citing *Id*., Exh. 7).[2] Despite withdrawing Request No. 6, Petitioner alleges that Respondent "still refuses to produce documents responsive to the remaining Requests in the Subpoena." (*Id*.).

On July 28, 2022, Petitioner initiated the instant miscellaneous action in support of the pending litigation in the Northern District of California. Specifically, Petitioner moves this Court to compel Respondent's compliance with the subpoena. (Doc. 1).

**II. Analysis**

The issue in this case is whether this Court should grant Petitioner's motion to compel compliance with the Subpoena issued to Respondent in the underlying litigation.  Respondent opposes the motion to compel and argues that the documents sought are not relevant, and the requests "are overly broad, disproportionate, and would unduly burden Mr. Elliot." (Doc. 8 at PAGEID 467).  For the following reasons, Petitioner's motion (Doc. 1) is granted in part and denied in part.

Federal Rule of Civil Procedure 45 governs motions to compel compliance with subpoenas served on a non-party.  Rule 45(a)(1)(D) provides that "[a] command in a subpoena to produce documents, electronically stored information, or tangible things requires the responding person to permit inspection, copying, testing, or sampling of the materials," and Rule 45(c)(2) similarly provides that "[a] subpoena may command . . . production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person. . . ." Fed. R. Civ. P. 45(a)(1)(D), (c)(2).

---

[2] Request No. 6 seeks "All Documents and Communications between You and any Governmental Entity concerning Corcept, including, but not limited to, Documents You provided to any Governmental Entity related to the allegation that Corcept was engaged in off-label marketing." (Doc. 1, Exh. 1, at PAGEID 27).

Upon proper service of the subpoena, if the party to whom the subpoena was issued wishes to challenge the request, the party may "serve . . . a written objection" (Fed. R. Civ. P. 45(d)(2)(B)) or "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that:"

> (i) fails to allow a reasonable time to comply;
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A).

It is well established that "the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Gov't Emps. Health Ass'n v. Actelion Pharms., Ltd.*, No. 2:22-mc-37, 2022 WL 5414401, at *1 (S.D. Ohio Oct. 7, 2022) (quoting *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (internal citation and quotation marks omitted)). Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Determining the scope of discovery is within this Court's discretion. *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998) (citing *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). The scope of discovery under the Federal Rules "is traditionally quite broad[,]" *Lewis*, 135 F.3d at 402 (citing *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir. 1970)), and Rule 26 acknowledges that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "When a nonparty challenges a subpoena on grounds that the request is over-burdensome, the party seeking the discovery must establish that the information sought is relevant." *Gov't Emps. Health Ass'n*, 2022 WL 5414401,

5

at *1 (citing *Spartanburg Reg. Healthcare Sys. v. Hillenbrand Indus.*, No. 1:05-mc-107, 2005 WL 2045818, at *4 (W.D. Mich. Aug. 24, 2005)). *See also Ohio Fresh Eggs, LLC v. Smith & Kramer, PC*, No. 2:20-cv-5267, 2022 WL 4007613, at *2 (S.D. Ohio Sept. 2, 2022).

The information sought by the subpoena is relevant. In the order ruling on defendants' motion to dismiss plaintiff's third amended complaint in the underlying litigation, United States District Judge Lucy Koh summarized plaintiffs' allegations concerning Mr. Elliott that Corcept deployed an off-label marketing scheme during his employment as a clinical sales specialist at Corcept:

> CW11 is a "former Corcept clinical sales specialist in the region comprised of Ohio, Kentucky, and Tennessee from November 2012 through July 2016 responsible for marketing and managing sales of Korlym to physicians." *Id.* at ¶ 177. According to CW11, beginning "in early 2016 [VP of Sales Tom] Burke began exerting pressure on sales personnel to market Korlym to physicians as a first line medical treatment for obesity, poorly controlled diabetes, or 'mild' or 'sub-clinical' Cushing's syndrome." *Id.* at ¶ 176. CW11 refused to market Korlym off-label, and "went to Defendant Belanoff [CEO] and Burke [VP of Sales] to raise concerns about Corcept's off-label marketing and was told by Burke to 'sit down and shut up.'" *Id.* Finally, CW11 alleges that three Corcept clinical specialists were let go during the Class Period for refusing to promote Korlym off-label. *Id.* at ¶¶ 192–194.
>
> \* \* \*
>
> Specifically, Plaintiffs have alleged that Corcept's CEO, Defendant Belanoff, accompanied CW11 on sales visits to physicians' offices and on those visits Belanoff marketed Korlym off-label to physicians. TAC at ¶ 370. When CW11 questioned Belanoff regarding these off-label promotions of Korlym, Belanoff stated, "I can say what I want." *Id.* CW11 later raised concerns to Belanoff and VP of Sales Burke regarding Korlym's off-label marketing practices and Burke told CW11 to "sit down and shut up." *Id.* at ¶ 176. Furthermore, CW11 recalls that during the Class Period, three Corcept employees were let go for raising concerns regarding off-label promotion of Korlym or for refusing to promote Korlym off-label. *Id.* at ¶¶ 192-194.

*Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*, No. 19-cv-01372, 2021 WL 3748325, at *5, 19 (N.D. Cal. Aug. 24, 2021).

In the instant action, the subpoena generally requests documents and communications

6

related to the underlying securities class action litigation, statements attributed to Mr. Elliott in the Complaint, and the allegations that Corcept engaged in off-label marketing.  (Doc. 1). Contrary to Respondent's general argument that the subpoena does not seek relevant information (Doc. 8 at PAGEID 476-77), the requests for documentation and communications in the subpoena are relevant to numerous issues in the underlying litigation, including whether Corcept engaged in a "'pervasive Company-wide off-label marketing scheme' to 'dupe unsuspecting physicians' 'into inappropriately prescribing Korlym.'"  (Doc. 1 at PAGEID 9, citing Complaint).  As Petitioner alleges, the operative complaint in the underlying litigation "relies heavily on purported reports from four confidential witnesses, including [Respondent] Mr. Elliott, who is identified as 'CW11' and is cited more than 68 times in the Complaint."  (*Id.*).

Petitioner alleges that "[d]iscovery thus far has revealed that at least one former Corcept employee created recordings of meetings and conversations during the employee's time at Corcept." (Doc. 9 at PAGEID 496, n.10).  Therefore, to the extent Respondent may be in possession of similar materials which relate to the off-label marketing scheme alleged in the complaint, this information is relevant to the claims in the underlying litigation.  Further, documents surrounding Respondent's termination from Corcept are relevant to cast light on Respondent's motivation in leaving Corcept given the allegations in the complaint that Corcept was engaged in off-label marketing practices.  Therefore, Petitioner has established that the documents and communications that it seeks in the Subpoena are relevant for purposes of Rules 26 and 45.

In addition to relevancy, Rule 26 requires that the discovery be "proportional to the needs of the case[.]"  Fed R. Civ. P. 26(b)(1).  In assessing proportionality under Rule 26, factors that the Court considers include "the importance of the issues at stake in the action, the amount in

7

controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. "Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure." *Gischel v. Univ. of Cincinnati*, No. 1:17-cv-475, 2018 WL 9945170, at *4 (S.D. Ohio June 26, 2018) (quoting *In re Caresource Mgmt. Grp., Co.*, 289 F.R.D. 251, 253 (S.D. Ohio 2013)) (in turn quoting *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)).

"A nonparty seeking to quash a subpoena bears the burden of demonstrating that the discovery sought should not be permitted." *Great Lakes Transp. Holding, LLC v. Yellow Cab Serv. Corp. of Florida, Inc.*, No. 11-50655, 2011 WL 2533653, at *1 (E.D. Mich. June 27, 2011) (citing 9A Wright & Miller, Federal Practice and Procedure § 2463.1). *See also Hendricks*, 275 F.R.D. at 253. If the discovery sought appears "relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance," or that the information sought is proprietary and its disclosure might be harmful. *Hendricks*, 275 F.R.D. at 253. *See also Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 294 F.R.D. 87, 92 (S.D. Ohio 2013).

### A. Request Nos. 1 and 6

Request No. 1, in which Petitioner seeks "A copy of Your most recent Resume" (Doc. 1, Exh. 1, at PAGEID 27), is moot in light of counsel for Respondent's representation to the Court that "counsel collected and either have produced or will produce this document." (Doc. 8 at PAGEID 472; *see also Id*. at PAGEID 476, n.2). Likewise, Request No. 6 is denied as moot due to Petitioner's previous withdrawal of this request. (Doc. 1 at PAGEID 11; *see also Id*., Exh. 7, at PAGEID 446).

8

### B. Request Nos. 2, 5, 7, 8, 9, and 11

Counsel for Respondent represents to the Court that the documentation and communications sought in Petitioner's Request Nos. 2, 5, 7, 8, 9, and 11 do not exist. In his response in opposition (Doc. 8), counsel asserts that regarding Request Nos. 2, 5, 7, 8, 9, and 11, "Interviews with Mr. Elliott and confirmatory searches and reviews of the documentary collection reveal that no such documents or communications exist." (Doc. 8 at PAGEID 472-73; *see also Id*. at PAGEID 467-69). Counsel states that the extent of Respondent's communication with plaintiffs' counsel was a telephone call where Respondent answered "a few stemwinder questions. . . ." (*Id*. at PAGEID 469; *see also Id*. at PAGEID 476). Counsel further states that Respondent "did not email or text with them, [and] he did not send them documents." (*Id*. at PAGEID 469). Petitioner does not challenge counsel for Respondent's representation to the Court that the documentation and communications sought in Petitioner's Request Nos. 2, 5, 7, 8, 9, and 11 do not exist. (*See* Doc. 9).

Respondent cannot be compelled to produce documents or other evidence that does not exist. *See Solly v. Mausser*, No. 2:15-cv-956, 2017 WL 4280935, at *2 (S.D. Ohio Sept. 27, 2017) ("Defendants do not have a duty to create documents that do not exist simply to comply with a discovery request. The Court, therefore, cannot compel Defendants to produce documents that do not exist."); *Brown v. Warden Ross Corr. Inst*., No. 2:10-cv-822, 2011 WL 1877706, at *5 (S.D. Ohio May 16, 2011) ("Defendants have represented that they do not have the information Plaintiff seeks. The Court cannot require them to produce what they do not have."); *Tolliver v. Liberty Mut. Fire Ins. Co*., No. 2:06-cv-904, 2008 WL 4951792, at * 2 (S.D. Ohio Nov. 17, 2008) ("A party cannot be compelled to produce documents which do not exist or which it does not possess or control."). Accordingly, Petitioner's motion to compel compliance

9

with Request Nos. 2, 5, 7, 8, 9, and 11 is denied.

### C. Requests Nos. 3, 4, and 10

Respondent raises several objections concerning Request Nos. 3, 4, and 10 in Petitioner's Subpoena:

> **Request No. 3** All Documents and Communications concerning Your termination of employment at Corcept, including but not limited to any termination or separation agreement(s).
>
> **Response and Objection to Request No. 3**: Elliott incorporates his General Objections.
>
> To the extent that any responsive documents exist, Elliott responds as follows: Elliott objects to Request Number 3 under Rule 26(b)(1) of the Federal Rules of Civil Procedure because it is vague, ambiguous, overbroad, and unduly burdensome. Elliott also objects that Request Number 3 is unreasonably duplicative and cumulative of discovery Plaintiff has propounded or can propound on other sources from which the documents and materials sought are more readily obtainable, including from Corcept's own files.
>
> Based on these Objections, Elliott will not produce documents in response to Request Number 3 to the extent such exist.
>
> **Request No. 4** All Documents and Communications concerning Corcept.
>
> **Response and Objection to Request No. 4**: Elliott incorporates his General Objections.
>
> To the extent that any responsive documents exist, Elliott responds as follows: Elliott further objects to Request Number 4 because it seeks documents and materials protected by the attorney work product doctrine, the attorney-client privilege, and/or the common or joint interest doctrine. Elliott will not produce any such privileged information. Elliott also objects to Request Number 4 under Rule 26(b)(1) of the Federal Rules of Civil Procedure because it is vague, ambiguous, overbroad, and unduly burdensome. Elliott also objects to the extent that Request Number 4 is unreasonably duplicative and cumulative of discovery Plaintiff has propounded or can propound on other sources from which the documents and materials sought are more readily obtainable.
>
> Based on these Objections, Elliott will not produce documents in response to Request Number 4 to the extent such exist.
> * * *
> **Request No. 10** All Documents and Communications concerning the allegation

>that Corcept was engaged in off-label marketing.
>
>**Response and Objection to Request No. 10**:  Elliott incorporates his General Objections.
>
>To the extent that any responsive documents exist, Elliott responds as follows: Elliott further objects to Request Number 10 because it seeks documents and materials protected by the attorney work product doctrine, the attorney-client privilege, and/or the common or joint interest doctrine.  Elliott will not produce any such privileged information.
>
>Elliott also objects to Request Number 10 under Rule 26(b)(1) of the Federal Rules of Civil Procedure because it is vague, ambiguous, overbroad, and unduly burdensome. Elliott further objects that Request Number 10 is unreasonably duplicative and cumulative of discovery Plaintiff has propounded or can propound on other sources from which the documents and materials sought are more readily obtainable.
>
>Based on these Objections, Elliott will not produce documents in response to Request Number 10 to the extent such exist.

(Doc. 1, Exh. 6, at PAGEID 437-42).

Respondent argues that these "Requests are overly broad, disproportionate, and would unduly burden Mr. Elliott." (Doc. 8 at PAGEID 467).  Respondent contends the "vast majority—if not all—of the documents implicated by the Requests target either Corcept's own files, or files Corcept could seek from Plaintiffs in the Corcept Securities Action.  Yet Corcept does not even try to show that it sought discovery from another source before serving the Subpoena on Mr. Elliott, a nonparty." (*Id*. at PAGEID 479) (internal citation omitted).  Citing authority from various district courts within the Sixth Circuit, Respondent argues that "there is an overwhelming amount of authority that, before seeking document discovery from a nonparty, a party must exhaust its own files and party discovery." (*Id*., citing cases).  Respondent argues that "Corcept's Requests are also unduly burdensome since they are overbroad." (*Id*. at PAGEID 481).  In support, Respondent points to the lack of any "limitation as to temporal scope or relevance." (*Id*.).  In sum, Respondent argues that "Corcept cannot justify imposing on a

11

nonparty the costs of reviewing and producing many—entirely irrelevant—files which it can more cheaply locate on its own systems, or more by party discovery." (*Id*. at PAGEID 482).

Petitioner argues that notwithstanding whether the discoverable information is available from another source, Respondent "is obligated to produce" any documents in his possession "regarding the statements attributed to him in the Complaint or regarding allegations that Corcept is or has ever been engaged in off-label marketing. . . ." (Doc. 1 at PAGEID 15). Petitioner further argues that Respondent may "have unique documents regarding his communications with other confidential witnesses or with Plaintiffs" that other sources may not possess. (*Id*., citing *Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc*., 278 F.R.D. 335, 339, 345 (S.D.N.Y. 2011)). Petitioner contends that Respondent has not met its burden to prove that the Subpoena is overly broad or unduly burdensome because Respondent "has failed to articulate why Corcept's Requests are especially—let alone unduly—burdensome or would require anything other than a typical search through his documents to identify any responsive materials." (*Id*. at PAGEID 16).

  1. Request No. 3

Petitioner's motion to compel responses to Request No 3., i.e., "All Documents and Communications concerning Your termination of employment at Corcept, including but not limited to any termination or separation agreement(s)" is denied. It is undisputed that Respondent was employed by Petitioner from November 2012 through July 2016. Petitioner argues that Respondent "left Corcept in August of 2016, long before this litigation was instigated. Thus, *it is possible* that certain documents in Mr. Elliott's Corcept custodial file were deleted, either by Mr. Elliott himself or by regular company practice, since there was no obligation to preserve such documents at the time of his departure." (Doc. 1 at PAGEID 494

12

n.6) (emphasis added). Although Petitioner notes the lack of undue burden to Respondent, "[a]s part of the undue burden analysis, courts within this Circuit have generally not required production by a non-party *when the same documents are available from a party*." *Atlas Indus. Contractors LLC v. In2Gro Techs. LLC*, No. 2:19-cv-2705, 2020 WL 1815718, at *3 (S.D. Ohio Apr. 10, 2020) (emphasis added) (citing cases). Petitioner has made no showing that it first sought to obtain the requested documents from its own files to no avail before seeking to compel Respondent to provide the same. *See Id*. (denying in relevant part the petitioner's motion to compel to the extent that the documents sought are in its own possession, custody, or control); *see also Elder v. Equifax Info. Servs., LLC*, No. 21-11753, 2022 WL 2961516, at *3 (E.D. Mich. July 26, 2022) (same). Accordingly, Petitioner's motion to compel responses to Request No. 3 is denied.

### 2. Request Nos. 4 and 10

Request No. 4 seeks "All Documents and Communications concerning Corcept." Request No. 10 seeks "All Documents and Communications concerning the allegation that Corcept was engaged in off-label marketing." Respondent alleges complying with these requests would present an undue burden.

Request No. 4 is facially overbroad because it is not limited to information having any bearing on the underlying litigation or temporally limited. For example, literal compliance with this request would include production of documents like pay stubs and W-2 forms for the time Respondent was employed by Corcept, which are wholly unrelated to the Corcept Securities Action. The motion to compel Request No. 4 is denied.

Request No. 10 is clearly relevant, and it appears that Respondent has collected and identified 40,000 potentially responsive documents. (Doc. 8 at PAGEID 471). Respondent

applied search terms to a "Preliminary Review Set" of documents, which Respondent defines as the 40,000 identified documents, minus "Corcept documents drawn from its own files (i.e., from Corcept's own email server)" and "photographs, videos, and other media without a text component (few of which relate to Corcept at all, but some of which contain privileged or other sensitive information)." (*Id*. at PAGEID 472). Subtracting the two stated categories leaves 20,000 documents, known as the "Preliminary Review Set." (*Id*.). Instead of individually conducting a document by document review, Respondent "applied the broad search terms (in the disjunct): 'Korlym' OR 'off-label' OR 'Corcept' OR 'Ferraro' to the Preliminary Review Set, and then conducted a responsiveness and privilege review of the resulting review set of documents (and their families) which hit on one of these search terms. Many of these were junk files (e.g., 'XML' temporary files created by one of the devices collected), but this process still yielded around 300 files, which Mr. Elliott has produced or will soon produce." (*Id*. at PAGEID 473).

Petitioner alleges Respondent's unilaterally-selected search terms were woefully inadequate, and Respondent's reference to "sensitive" documents is not clear. Petitioner also objects to the exclusion of Corcept documents and media files.

Pursuant to Rule 26(b)(2)(C)(i), the Court must limit the scope of discovery if it determines that the discovery is unreasonably cumulative or duplicative or that it can be obtained from some other source that is more convenient, less burdensome, or less expensive. Fed. R. Civ. P. 26(b)(2)(C)(i). To the extent Petitioner seeks documents "drawn from its own files (i.e., from Corcept's own email server)," the Court is not persuaded that Petitioner cannot identify from its own files the relevant documents that underpin Mr. Elliot's allegations. Petitioner alleges there is no "reasonable" way for identifying such documents, but Petitioner has made no

14

showing it has made any such attempt. Without some showing that Petitioner cannot identify and obtain the relevant discovery from its own files, the motion to compel Corcept documents responsive to Request No. 10 is denied. *See Atlas Indus.*, 2020 WL 1815718, at *3; *Tolliver v. Abuelo's Int'l, LP*, No. 2:20-cv-3790, 2021 WL 3188420, at *2 (S.D. Ohio July 28, 2021) (and cases cited therein).

On the other hand, Respondent has failed to demonstrate that compliance with Petitioner's Request No. 10 with respect to the non-Corcept documents would be unduly burdensome. Aside from stating that "it would be unduly burdensome and disproportionate to . . . individually review photographs, videos, and other media without a text component" (Doc. 8 at PAGEID 472), Respondent has not identified the type of burden he would face if Petitioner's motion to compel is granted. Nor has Respondent provided the Court with any information on the anticipated costs of complying with Petitioner's subpoena. Respondent cannot simply rely on the "mere assertion that compliance would be burdensome without showing the manner and extent of the burden. . . ." *United States v. Blue Cross Blue Shield of Michigan*, No. 10-cv-14155, 2012 WL 4513600, at *5 (E.D. Mich. Oct. 1, 2012) (quoting 9A Wright & Miller, Federal Practice and Procedure § 2463.1). Moreover, Respondent has not put forth any evidence in support of his claim of undue burden and, consequently, he has failed to meet his burden. *Cf. Allen v. Howmedica Leibinger, GmhH*, 190 F.R.D. 518, 525 (W.D. Tenn. 1999) (granting a non-party's motion to quash a subpoena where the non-party established that he would face a substantial burden if required to comply with discovery requests where the non-party submitted an unrebutted affidavit explaining the time and effort review of nearly 70,000 documents and nearly a month of man-hours-compliance would require). *See also Clark v. Louisville Jefferson Cnty. Metro Gov't*, No. 3:17-cv-419, 2022 WL 4389549, at *8 (W.D. Ky. Sept. 22, 2022)

("Given the relevance of [the nonparty's] testimony, the nature of the requested documents, and the Plaintiffs' explanations of [the nonparty's] extensive involvement with their post-conviction proceedings, [the nonparty's] conclusory allegations of 'undue burden' and 'harassment' are not persuasive and fall far short of the specific showing required."). As Petitioner has demonstrated the relevance of the information sought and Respondent has failed to meet his burden to show that the production would be unduly burdensome, Petitioner's motion to compel responses to Request No. 10, with the exception of the Corcept documents, is granted.

To the extent that Respondent alleges that the documentation contains "privileged or other sensitive information" (Doc. 8 at PAGEID 472), the Court lacks sufficient information to make a definitive ruling on this issue. Respondent has asserted these concerns in an abstract way without providing a privilege log to Petitioner or the Court. Accordingly, the Court finds that the parties should first jointly attempt to resolve Respondent's confidentiality concerns before the Court addresses the issue. *See Gischel*, 2018 WL 9945170, at *6. Petitioner and Respondent are hereby ordered to meet-and-confer by telephone, teleconference, or in person—not solely by the exchange of written correspondence—within thirty days of the date of this Order to attempt to resolve any privilege, confidentiality, or privacy disputes.

Likewise, the parties are ordered to meet and confer, under the same stated parameters, on the search terms to be applied to the documents responsive to Request No. 10. "[A]n individual served with a subpoena duces tecum has an obligation to conduct a reasonable search to ensure that non-privileged documents that are relevant . . . are produced." *Ohio A. Philip Randolph Inst. v. Smith*, No. 1:18-cv-357, 2018 WL 6308849, at *5 (S.D. Ohio Dec. 3, 2018) (quoting *Alexander v. FBI*, 186 F.R.D. 21, 38 (D.D.C. 1998)). "Designing search terms to be used to produce emails or other electronically stored information requires 'careful thought,

16

quality control, testing, *and cooperation with opposing counsel*.'" (*Id.*) (quoting *William A. Gross Constr. Assocs. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134 (S.D.N.Y. 2009)) (emphasis added). Petitioner contends the search terms used by Respondent were woefully inadequate and resulted in the exclusion of relevant and responsive documents. The Court tends to agree. Given the allegations in the complaint, it would appear inclusion of the terms "Burke" and/or "Belanoff" would have been reasonable in conducting a search for relevant documents. Accordingly, within 30 days of the date of this Order, counsel for Respondent and Petitioner are ordered to meet and confer, in good faith, in order to develop search terms or objective search criteria for use in identifying responsive and non-privileged documents within Respondent's possession concerning Request No. 10. *See, e.g., McNulty v. Reddy Ice Holdings, Inc.*, 271 F.R.D. 569, 570 (E.D. Mich. 2011) (requiring attorneys for both sides to meet and confer in good faith "to develop search terms or objective search criteria for use in identifying responsive and non-privileged documents. . . .").

### III. Respondent's motion for sanctions (Doc. 8)

Respondent moves for sanctions against Petitioner under Fed. R. Civ. P. 45(d)(1) for failing to take reasonable steps to avoid imposing an undue burden and expense on Respondent. (Doc. 8). Fed. R. Civ. P. 45(d)(1) provides that a party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1). "Whether an undue burden has been imposed is a factual inquiry made on a case by case basis and courts have generally required blatant abuse of the subpoena power before awarding sanctions. A disputed subpoena on its

17

own, even if ultimately found unwarranted, typically does not support an imposition of sanctions. Rather an element of bad faith is usually required." *N. Am. Rescue Prod., Inc. v. Bound Tree Med., LLC*, No. 2:08-cv-101, 2009 WL 4110889, at *13 (S.D. Ohio Nov. 19, 2009), *objections overruled*, 2010 WL 1873291 (S.D. Ohio May 10, 2010) (internal quotations and citations omitted).[3] "Thus, when an issuing party engages in good faith negotiations to resolve conflicts over subpoenas and to avoid imposing undue burden, courts have declined to impose Rule 45 sanctions in the absence of other aggravating factors." *Ohio Fresh Eggs, LLC*, 2022 WL 4007613, at *6 (citing *Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994). "An award of sanctions under Rule 45(d)(1) is left to the Court's discretion." *In re Risner*, No. 2:21-mc-00002, 338 F.R.D. 380, 384 (S.D. Ohio Mar. 29, 2021) (citations omitted).

      Respondent fails to point to any behavior by Petitioner rising to a sanctionable level. Respondent argues that "Corcept has refused at every step to narrow its overbroad and disproportionate Subpoena, and has specifically scoffed at the well-settled requirement of exhausting first-party sources before shifting discovery costs to nonparties." (Doc. 8 at PAGEID 483). In support, Respondent cites *In re: Mod. Plastics Corp.*, 890 F.3d 244 (6th Cir. 2018), with no accompanying explanation of its relevance to the instant matter. The Sixth Circuit's decision in *In re: Mod. Plastics Corp.* is inapposite to the facts of this case. There, the Sixth Circuit affirmed the lower court's finding that sanctions were warranted under Rule 45(d)(1) because "the subpoenas issued to the non-parties were unduly burdensome for reasons that included the undisputedly broad scope of the requests in terms of the number of categories, the breadth of each category, and the temporal reach of the requests" and, the issuing party "would have known that complying with such subpoenas would involve considerable time and resources,

---

[3] *Cf. In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (where the Sixth Circuit indicated that a finding of bad faith is not required to impose sanctions under Rule 45).

implicate significant concerns about customer privacy for [the non-party], and require review for privileged communications and attorney work product regarding matters for which [attorneys for the non-party] had been retained." *Id*. at 252. The Court of Appeals concluded that "much of the expense could have been avoided either initially, or by engaging with Respondents' counsel to address the concerns, tailor the document requests, or comment on the proposed protective order. *Id*.

Unlike the conduct in *In re: Mod. Plastics Corp*., here, Petitioner narrowed the Subpoena after conferring with counsel for Respondent by voluntarily removing Request No. 6 and has offered a continued willingness to engage in discussions to narrow the requests in the Subpoena and to work with Respondent to resolve any outstanding issues. (*See* Doc. 9, Exhs. 1 and 2; *see also Id*. at PAGEID 492, 497-501). *See In re Risner*, 338 F.R.D. at 383 ("Thus, when an issuing party engages in good faith negotiations to resolve conflicts over subpoenas and to avoid imposing undue burdens, courts have declined to impose Rule 45 sanctions in the absence of other aggravating factors.").

Respondent has provided no evidence that Petitioner abused the subpoena process or demonstrated any bad faith. Consequently, Respondent's motion for sanctions is denied. *See Id.* at 384 (denying motion for sanctions where "the subpoena did not impose undue burdens and [the issuing party] took reasonable steps to avoid such an imposition").

**IT IS THEREFORE ORDERED:**

1. Pursuant to Fed. R. Civ. P. 45, Petitioner's motion to compel compliance with the Subpoena (Doc. 1) is **GRANTED IN PART and DENIED IN PART**. Petitioner's motion to compel compliance is **DENIED** with respect to Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, and 11. Petitioner's motion is **GRANTED** with respect to Request No. 10. Within **30 (thirty) days** of the date of

19

this Order, counsel for Respondent and Petitioner are ordered to meet and confer, in good faith, in order to attempt to resolve any privilege, confidentiality, or privacy disputes and to develop search terms or objective search criteria for use in identifying responsive and non-privileged documents within Respondent's possession concerning Request No. 10 (excluding Corcept documents drawn from its own files).  Following the meet and confer, the parties shall contact the Court if they are unable to resolve their concerns and wish to request a discovery conference.

2. Respondent's motion for sanctions (Doc. 8) is **DENIED**.

  **IT IS SO ORDERED**.

Date: 11/30/2022

Karen L. Litkovitz
Chief United States Magistrate Judge